**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NICOLE BOLDER, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 5:23-cv-05138-JMG |
| | : | |
| OFFICER THOMAS BRECKER, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                **October 31, 2025**

## I.    OVERVIEW

Plaintiff sued Defendant over an incident that occurred on January 20, 2022, alleging racial discrimination, unlawful seizure, and several state law claims. The parties seek to introduce expert testimony to assist the jury in determining whether Defendant acted in a discriminatory manner and in assessing Plaintiff's psychological damages. Both parties produced expert reports after the time set forth in the scheduling orders, both parties filed motions to strike for late disclosures, and both parties filed untimely *Daubert* motions. The Court will address the motions in one omnibus opinion.

For the reasons that follow, the Court **GRANTS** Defendant's motion to strike Plaintiff's Expert Pastor John Peyton, Ph.D., and **DENIES** the remaining motions as untimely. Upon the Court's *sua sponte Daubert* analysis, the Court finds that Plaintiff's Expert Larry Rotenberg, M.D. is **PARTIALLY PRECLUDED** from testifying at trial, Plaintiff's Expert Darrin Porcher, Ed.D. is **PRECLUDED** from testifying at trial, and Defense Expert Stephen Mechanick, M.D. is **ADMITTED** to testify at trial.

## II.    BACKGROUND

On January 20, 2022, Plaintiff Nicole Bolder locked herself out of her car in the Walmart parking lot in Caernarvon Township, Pennsylvania. Initially, she received help from Defendant Officer Thomas Brecker, who was responding to a 911 hang-up call at Walmart. Defendant offered to call a towing company to unlock Plaintiff's car. Plaintiff asked Defendant if the tow company would "bill" her, to which Defendant said yes. The towing company, Creative Customs, advised that it could send a truck to Walmart. When the tow truck arrived, Defendant left the scene.

After unlocking her car, the tow truck driver asked Plaintiff for payment. Plaintiff explained that she did not have money on her, but Defendant informed her that she would be billed at a later date. The tow truck driver advised that was incorrect; payment was due immediately. The tow truck driver called the owner of Creative Customs to report the situation. The owner then called Defendant and told him that Plaintiff did not have money to pay for the lock-out service.

Defendant returned to Walmart. He asked Plaintiff what could be done to resolve this situation, whether she had a job, or whether she knew anyone who could lend her $100. Despite Plaintiff explaining that she was all by herself, Defendant told her, "I suggest you call somebody." When Plaintiff said she did not understand and that she was told the tow truck company would bill her, Defendant angrily responded, "You owe me money, I'm going to pay for it ok, but you owe me money. If you do not pay me, I will arrest you for theft."

Using a similar tone of voice that he used with Plaintiff, Defendant then ordered the tow truck driver to follow him, so he could give the driver $100 for the lock-out service. The tow driver reported that Defendant pulled into the ATM line facing the wrong direction and pinned three other vehicles in line. After Defendant's card declined, Defendant told the tow truck driver to follow

him to Wawa. Defendant drove at a high rate of speed on Route 23, going through traffic lights with his emergency lights activated.

After Defendant paid the tow truck driver, he returned to Walmart. Plaintiff was still there, crying and with cash in her hand. Defendant repeatedly apologized to her and refused Plaintiff's money, as the township would be reimbursing him.

Plaintiff Nicole Bolder brought claims against Defendant Officer Thomas Brecker, alleging racial discrimination, unlawful seizure, and supplemental claims for false imprisonment, intentional infliction of emotional distress, and assault. The parties asked the Court for several extensions throughout the litigation, and the Court obliged. Fact and expert discovery closed on May 16, 2025, and summary judgment and *Daubert* motions were due on July 28, 2025. *See* First Am. Scheduling Order (ECF No. 43); Second Am. Scheduling Order (ECF No. 45). Defendant filed a motion for summary judgment on the due date, which is still pending with the Court. Neither party filed *Daubert* motions.

On October 1, 2025, Defendant filed three motions: two motions to strike and/or motions *in limine*, and one motion *in limine*. *See generally* Def.'s Mot. to Strike and/or Mot. in Lim. to Preclude Larry Rotenberg (ECF No. 59); Def.'s Mot. to Strike and/or Mot. in Lim. to Preclude John Peyton (ECF No. 58); Def.'s Mot. in Lim. (ECF No. 57).

Plaintiff filed her motion *in limine* on October 13, 2025. *See generally* Pl.'s Mot. in Lim. (ECF No. 65). Both parties sought to preclude experts and challenged untimely expert disclosures. In light of the Court setting the deadline for *Daubert* motions as July 28, 2025, and expert disclosures far before that, the Court requested the parties confirm that they were: (1) filing *Daubert* motions two months late, and (2) challenging the admissibility of the other's witnesses based on untimely disclosure. If so, the Court requested the parties show cause why each untimely

3

disclosure should be excused, and why the Court should consider the merits of the untimely disclosures.

Both parties agreed to waive the untimeliness arguments against each other, except with respect to Plaintiff's Expert Pastor John Peyton, Ph.D. Additionally, Plaintiff argued that Pastor Peyton's testimony was not late, did not prejudice Defendant, and exclusion would be a "drastic sanction." *See* Pl.'s Resp. to Req. to Show Cause, at 2-5 (ECF No. 73). Plaintiff further argued that she did not receive Dr. Mechanick's report until September 9, 2025 and could not file a timely *Daubert* motion. *Id.* at 6. Defendant denied altogether that he filed *Daubert* motions. *See* Def.'s Resp. to Req. to Show Cause, at 2 (ECF No. 72).

## III.    LEGAL STANDARD

"Under the Federal Rules of Evidence, a trial judge acts as a gatekeeper to ensure that any and all expert testimony or evidence is not only relevant, but also reliable." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (internal quotations omitted). "Rule 702 has a liberal policy of admissibility," so long as an expert meets the requirements of qualification, reliability, and fit. *Nat'l Fire & Marine Ins. Co. v. Newtown Square*, *LLC*, No. CV 21-5397, 2024 WL 1683609, at *2 (E.D. Pa. Apr. 18, 2024) (citing *Kannankeril v. Terminix Int'l, Inc.,* 128 F.3d 802, 806 (3d Cir. 1997), *as amended* (Dec. 12, 1997)); *J.L. v. Lower Merion Sch. Dist.*, No. CV 20-1416-KSM, 2024 WL 5227410, at *3 (E.D. Pa. Dec. 26, 2024).

Rule 702 was amended in 2023 and currently reads:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702. The text of Rule 702 has not been substantively altered other than to clarify that "the party proposing the expert witness must show that each prong [of admissibility]— qualification, reliability, and fit—is satisfied by a preponderance of proof." *Lower Merion Sch. Dist.*, 2024 WL 5227410, at \*4; *Johnson v. Comodo Group, Inc.*, No. CV 2:16-04469, 2024 WL 2933195, at \*4 n.6 (D.N.J. June 10, 2024); *Power v. Hewlett-Packard Co.*, No. 2:17-CV-00154, 2024 WL 4040432, at \*3 (W.D. Pa. July 19, 2024). The amendment also "emphasizes that a court must evaluate the reliability of an expert's conclusions drawn from his or her methodology, not just the methodology itself." *Power*, 2024 WL 4040432, at \*4.

***First***, the Court must evaluate the expert's qualifications. *See UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832 (3d Cir. 2020). A witness is qualified if the witness has "specialized expertise" in the testimony's subject matter. *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). A "broad range of knowledge, skills and training" can make an expert qualified. *Phila. Tr. Co. v. Temple Univ. Hosp., Inc.*, No. 2:21-CV-03413, 2024 WL 5057595, at \*2 (E.D. Pa. Dec. 9, 2024) (internal quotations omitted*); see Pineda*, 520 F.3d at 244. This is admittedly a low bar, even with the recent amendment to Rule 702. *See Phila. Tr. Co.*, 2024 WL 5057595, at \*2. The specialized expertise or knowledge required can come from "practical experience as well as academic training and credentials." *Id.* (internal quotations omitted).

***Second***, the Court must assess the ***reliability*** of the expert's testimony. *See UGI Sunbury LLC*, 949 F.3d at 832. "Rule 702's reliability threshold requires expert testimony to be based on the ***methods*** and procedures of science." *Id.* at 833-34 (internal quotations omitted) (emphasis

5

added). In other words, the expert must use a reliable technique or process to form the basis of their opinion, which is what courts refer to as "good grounds." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 80-81 (3d Cir. 2017); *Pineda*, 520 F.3d at 247. "[A]n expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." *Lower Merion Sch. Dist.*, 2024 WL 5227410, at *4 (quoting *Pineda*, 520 F.3d at 244) (other citation omitted). "[I]f the court finds it more likely than not that an expert has a sufficient basis to support an opinion, the fact that the expert has not read every single study that exists will raise a question of weight and not admissibility." FED. R. EVID. 702 advisory committee's note to 2023 amendment. But "[s]peculation does not cut it." *Slatowski v. Sig Sauer, Inc.*, 148 F.4th 132, 138 (3d Cir. 2025).

The reliability requirement makes certain that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the field." *Lower Merion Sch. Dist.*, 2024 WL 5227410, at *7 (quoting *Keller v. Feasterville Fam. Health Care Ctr.*, 557 F. Supp. 2d 671, 676 (E.D. Pa. 2008)). In making this determination, courts are encouraged to evaluate:

> (1) whether a method consists of a testable hypothesis;
> (2) whether the method has been subject to peer review;
> (3) the known or potential rate of error;
> (4) the existence and maintenance of standards controlling the technique's operation;
> (5) whether the method is generally accepted;
> (6) the relationship of the technique to methods which have been established to be reliable;
> (7) the qualifications of the expert witness testifying based on the methodology; and
> (8) the non-judicial uses to which the method has been put.

*Cohen v. Cohen*, 125 F.4th 454, 462 (3d Cir. 2025) (quoting *UGI Sunbury*, 949 F.3d at 834).

**Third**, the Court must determine whether the expert's testimony "fits" the case. *See UGI Sunbury LLC*, 949 F.3d at 832. An expert witness's testimony fits a case only if it more likely than

not "will ***help the trier of fact*** to understand the evidence or to determine a fact in issue." Fᴇᴅ. R. Eᴠɪᴅ. 702(a) (emphasis added); *UGI Sunbury LLC*, 949 F.3d at 835. "The fit requirement ensures that there is a sufficient nexus between the expert's testimony and the facts that the jury is being asked to consider." *Bradley v. Amazon.com, Inc.*, No. CV 17-1587, 2023 WL 2574572, at *4 (E.D. Pa. Mar. 17, 2023), *reconsideration denied*, 2023 WL 2843788 (E.D. Pa. Apr. 6, 2023) (internal quotation marks and citations omitted). "Put another way, this is a question of relevance, and Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility if it has the potential for assisting the trier of fact." *United States v. Schiff*, 602 F.3d 152, 173 (3d Cir. 2010) (internal quotation marks and citations omitted); *see United States v. Ford*, 481 F.3d 215, 219 n.6 (3d Cir. 2007) (explaining fit is primarily a "relevance concern"). But the "testimony will be excluded if it is not scientific knowledge ***for purposes of the case***." *Cohen*, 125 F.4th at 464 (quoting *UGI Sunbury*, 949 F.3d at 835) (emphasis in original).

## IV.    ANALYSIS

### a.  Request to Show Cause

Both parties ask the Court to strike the other's expert. Defendant seeks to strike Pastor John Peyton, Ph.D. and Larry Rotenberg, M.D. due to untimely disclosure. *See* Def.'s Mot. to Strike and/or Mot. in Lim. to Preclude John Peyton, at 2-5 (late disclosure of witness); Def.'s Mot. to Strike and/or Mot. in Lim. to Preclude Larry Rotenberg, at 2-3 (ECF No. 59-1) (late disclosure of fee schedule and testimony list, and insufficient disclosure of CV); Def.'s Opp'n to Pl.'s Mot. to Strike and/or Mot. in Lim., at 2 (ECF No. 68) (requesting the Court strike Dr. Rotenberg's report for being untimely). Likewise, Plaintiff appears to ask the Court to strike Stephen Mechanick, M.D. because of his untimely disclosure. *See* Pl.'s Mot. to Strike and/or Mot. in Lim., at 1, 6 (ECF No. 65-1). In response to the Court's request to show cause, both parties reported their willingness

to waive the untimely disclosure arguments for Drs. Mechanick and Rotenberg. *See* Pl.'s Resp. to Req. to Show Cause, at 5 (ECF No. 73) (withdrawing objection with respect to Dr. Mechanick's report); Def.'s Resp. to Req. to Show Cause, at 5 (withdrawing motion with respect to Dr. Rotenberg). That leaves Defendant's Motion to Strike Pastor John Peyton, Ph.D.

The Court would be acting well within its discretion by precluding all experts who were not disclosed in accordance with Rule 26(a)(2) or by the dates set forth in the Court's scheduling orders. *See* FED. R. CIV. P. 16(f)(1)(C) ("On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney[] fails to obey a scheduling or other pretrial order."); FED. R. CIV. P. 37(b)(2)(A)("[T]he court where the action is pending may issue further just orders," including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."); FED. R. CIV. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). Counsel collaborated to intentionally skirt the Court's deadlines, and neither party demonstrated good cause in doing so. However, the Court will not punish the parties by wholesale precluding Dr. Rotenberg and Dr. Mechanick for the dilatory conduct of counsel.

But Pastor Peyton is a different story. Plaintiff disclosed Pastor Peyton for the first time on August 11, 2025—the day that Plaintiff filed her opposition to Defendant's Motion for Summary Judgment. *See* Def.'s Mot. to Strike and/or Mot. in Lim. to Preclude John Peyton, at 1 (ECF No. 58-1); Pl.'s Opp'n to Mot. to Strike and/or Mot. in Lim., at 2 (ECF No. 69). In rebutting Defendant's motion to strike, Plaintiff argues that Defendant did not suffer prejudice because he received the report 91 days before trial, as permitted by Rule 26(a)(2)(D)(i), and Defendant was

aware that racial discrimination was at issue. Pl.'s Opp'n to Mot. to Strike and/or Mot. in Lim., at 2-3 (ECF No. 69).

Plaintiff's argument is not only unpersuasive but inaccurate. While Plaintiff is correct that Rule 26's default language requires expert disclosures to be made at least 90 days before trial, Plaintiff glosses over the part of the rule that states, **"*[a]bsent a stipulation or a court order.*"** *See* FED. R. CIV. P. 26(a)(2)(D). The Court set that deadline as March 14, 2025, and afforded Plaintiff further extensions of April 15, 2025, for her police practices expert, and May 30, 2025, for her psychiatric damages expert. *See* First Am. Scheduling Order (ECF No. 43); Second Am. Scheduling Order (ECF No. 45). Not only did Plaintiff fail to disclose that she intended to present a discrimination expert in the parties' 26(f) Report, she also failed to address the need for a discrimination expert—let alone that she needed extra time—during the Court's status conference on April 1, 2025, where she requested extra time for her police expert and psychiatric damages expert.

In response to the Court's request to show cause for disregarding the Court's deadlines, Plaintiff relied on the factors set forth in *DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193 (3d Cir. 1978) and *Bowersfield v. Suzuki Motor Corp.*, 151 F. Supp. 2d 625 (E.D. Pa. 2001) to argue that Pastor Peyton's testimony should not be precluded. *See* Pl.'s Resp. to Req. to Show Cause, at 4-5 (ECF No. 73). The factors the Court must consider before excluding evidence for failure to disclose are: "(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court; and (4) bad faith or willfulness in failing to comply

with the court's order." *DeMarines*, 580 F.2d at 1201-02; *see also Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000) (affirming district court's imposition of discovery sanctions).

The Court is unconvinced by Plaintiff's arguments. Plaintiff argues that Defendant was on notice that racial discrimination was at issue since receiving Dr. Porcher's report on April 15, 2025, and had since then to cure that prejudice. While it is true that Defendant had since April 15, 2025 to respond to **Dr. Porcher**'s report, that bears no relevance to Defendant's ability to respond to **Pastor Peyton**'s report. By the time Defendant received Pastor Peyton's report, discovery had been closed for nearly three months. *See* First Am. Scheduling Order (ECF No. 43) (setting deadline for fact and expert discovery as May 16, 2025). And even assuming that Defendant had enough time to review and respond to the report, Plaintiff completely disregards how her failure to disclose affects the Court and the Court's other cases. Plaintiff also neglects to explain how not disclosing to Defendant that she intended to have a racial discrimination expert is not willful neglect. Her email sent after the fact does nothing to remedy that.

Perhaps recognizing the weakness of her argument, Plaintiff argues as a final point that "exclusion of evidence is a 'drastic sanction.'" *See* Pl.'s Resp. to Req. to Show Cause, at 5 (ECF No. 73). The Court agrees. Indeed, that is why the Court will not impose Rule 16(f) sanctions and preclude Dr. Rotenberg and Dr. Mechanick from testifying—despite counsel agreeing to intentionally violate the Second Amended Scheduling Order and producing reports far after the Court's deadlines of May 30, 2025, and June 30, 2025. *See* Second Am. Scheduling Order (ECF No. 45).

Plaintiff blindsided Defendant with her racial discrimination expert on August 11, 2025. Plaintiff never once disclosed that she had a racial discrimination expert before that date. Not on the Rule 26(f) report, not at status conferences, and not by the deadlines set forth in the Court's

scheduling orders. Contrary to Plaintiff's assertion that Defendant had more than 90 days to cure any prejudice, Defendant does *not* have the opportunity to cure. The deadline to produce expert reports expired on March 14, 2025, discovery closed on May 16, 2025, and the deadline to file summary judgment motions was July 28, 2025. *See* First Am. Scheduling Order (ECF No. 43); Second Am. Scheduling Order (ECF No. 45). Giving Defendant the opportunity to cure would require the Court to reopen discovery and reschedule trial. That the Court will not do.

Defendant's motion to strike Pastor Peyton is **GRANTED**. Pastor Peyton is **PRECLUDED** from testifying at trial due to untimely disclosure.

### b. Motions *in Limine*

#### 1. Defendant's Motions *in Limine*

Defendant's remaining motions seek to preclude Plaintiff's experts, Larry Rotenberg, M.D. and Darrin Porcher, Ed.D., from testifying due to irrelevance and the experts' lack of qualifications. *See* Def.'s Mot. to Strike and/or Mot. in Lim. to Preclude Larry Rotenberg, at 5 (ECF No. 59-1); Def.'s Mot. in Lim., at 1 (ECF No. 57-1). Recognizing these are untimely *Daubert* motions filed more than two months after the Court's deadline set forth in the scheduling order, the Court requested Defendant to show cause why it should consider the untimely motions. Defendant maintained that these motions were motions *in limine*, not *Daubert* motions, because "Defendant is challenging . . . the irrelevant opinions of" Plaintiff's experts. *See* Def.'s Resp. to Req. to Show Cause, at 2 (ECF No. 72).

That assertion is belied by Defendant's own motions. Defendant specifically challenges both experts' qualifications. *See* Def.'s Mot. to Strike and/or Mot. in Lim. to Preclude Larry Rotenberg, at 5 (ECF No. 59-1) (arguing Dr. Rotenberg "veer[s] way off course and delve[s] into areas for which Dr. Rotenberg is neither qualified nor permitted to testify as a matter of law."); Def.'s Mot. in Lim., at 1 (ECF No. 57-1) ("Dr. Porcher improperly opines on the alleged

discriminatory intent of Ofc. Brecker which is an issue he is both unqualified to give and which is as a matter of law irrelevant as an officer's motive – good or bad – is irrelevant."). Indeed, Defendant even cited to *Daubert* in these so-called motions *in limine*. *See* Def.'s Mot. in Lim., at 3-4 (ECF No. 57-1); Def.'s Mot. to Strike and/or Mot. in Lim. to Preclude Larry Rotenberg, at 3-4 (ECF No. 59-1).

These motions are *Daubert* motions dressed as motions *in limine*, and the Court need not consider them. *See Taylor v. Shields*, 744 F. App'x. 83, 87 (3d Cir. 2018) (citing *Eichorn v. AT&T Corp.*, 484 F.3d 644, 650-51 (3d Cir. 2007)) (concluding district court was within its discretion under Rule 16(b) "to enforce its scheduling order and therefore deny [plaintiff's] *Daubert* motion as untimely"). The Court acknowledges that Defendant's untimely *Daubert* motion with respect to Dr. Rotenberg is related to Defendant granting Plaintiff an informal extension for Dr. Rotenberg's report. *See* Def.'s Mot. to Strike and/or Mot. in Lim. to Preclude Larry Rotenberg, at 1 (ECF No. 59-1); Def.'s Resp. to Req. to Show Cause, at 4 (ECF No. 72). But a scheduling order "may be modified only for good cause and with the judge's consent." *See* FED. R. CIV. P. 16(b)(4). Moreover, any stipulation between the parties that "extend[s] the time for any form of discovery must have court approval if it would interfere with the time set for completing discovery, for hearing a motion, or for trial." *Banks v. City of Phila.*, 309 F.R.D. 287, 291 (E.D. Pa. 2015). The informal extension given to Plaintiff infringed on the Court's scheduling order, and in turn, Defendant filed his *Daubert* motion more than two months late.

Defendant's untimely *Daubert* motion with respect to Dr. Porcher, however, is entirely inexcusable. Defendant received this report on or about April 15, 2025. *See* Pl.'s Resp. to Req. to Show Cause, at 7 (ECF No. 73). Defendant had more than three months to draft a timely *Daubert*

motion. Instead, Defendant sat on this report for more than five months and filed his *Daubert* motion more than two months late.

Both of Defendants' motions are untimely, and Defendant showed neither good cause nor asked the Court for permission. The Court is enforcing its scheduling order and **DENYING** both motions as untimely.

### 2.  Plaintiff's Motion *in Limine*

Plaintiff filed one motion *in limine*, seeking to preclude Dr. Mechanick. Like Defendant, the Court asked Plaintiff to show cause why it should consider her untimely motion. Plaintiff argued that the Court should consider the merits of her motion *in limine* because she meets the requirements for excusable neglect, as set forth in *Krauss v. Iris USA, Inc.*, No. CV 17-778, 2019 WL 2268975, at *2 (E.D. Pa. May 24, 2019). *See* Pl.'s Resp. to Req. to Show Cause, at 6 (ECF No. 73). *Krauss* states that "the Court must consider 'all relevant circumstances surrounding the party's omission,' including: (1) the danger of prejudice; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." *Krauss*, 2019 WL 2268975, at *2 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

While Plaintiff accurately points out that she could not file a *Daubert* motion by July 28, 2025, she omits that it is of her own making. *See* Pl.'s Resp. to Req. to Show Cause, at 6 (ECF No. 73). The parties collectively agreed to circumvent the Court's scheduling orders. *See id.* at 5 ("Both parties operated under a mutual understanding that additional time would be permitted for the production of medical expert reports."). Further, absent from Plaintiff's analysis is how this affects the Court and how the parties' intentional sidestepping of the Court's scheduling orders could possibly constitute "good faith." Plaintiff's argument also misses an important part of the

procedure discussed in *Krauss*. "To access this rule, 'a party must make a formal motion for extension of time and the district court must make a finding of excusable neglect.'" *Id.* (quoting *Drippe v. Tobelinski*, 604 F.3d 778, 785 (3d Cir. 2010)). Plaintiff filed no such motion.

Plaintiff's *Daubert* motion is "thinly disguised as a motion *in limine*," and she "did not file a motion for extension of time showing excusable neglect." *See Krauss*, 2019 WL 2268975, at *2. Plaintiff's motion is therefore **DENIED** as untimely.

### c. *Sua Sponte Daubert* Determination

"The Third Circuit Court has not directly addressed the issue of whether a trial court may make a *Daubert* determination *sua sponte*. However, other courts have permitted such determinations." *Schloss v. Sears Roebuck & Co.*, No. 04-CV-2423, 2006 WL 8459575, at *3 (E.D. Pa. Sept. 27, 2006) (collecting cases); *cf. Pugh v. Northampton Hosp. Co., LLC*, No. 23-2262, 2024 WL 3581171, at *3 (3d Cir. July 30, 2024) (affirming district court's decision to exclude an expert where the court in *Pugh v. Cmty. Health Sys., Inc.*, No. 5:20-CV-00630-JMG, 2023 WL 3361166 (E.D. Pa. May 10, 2023) did not hold a *Daubert* hearing and excluded expert testimony by a *sua sponte Daubert* determination). The Supreme Court has also recognized that "[t]he trial court must have the same kind of latitude in deciding how to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides whether or not that expert's relevant testimony is reliable." *Schloss*, 2006 WL 8459575, at *3 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). And federal courts have found "[a] district court's *Daubert* inquiry need not take any specific form, and its *sua sponte* consideration of the admissibility of expert testimony is permissible so long as the court has an adequate record on which to base its ruling." *Id.* (quoting *Miller v. Baker Implement Co.*, 439 F.3d 407, 413 (8th Cir. 2006); citing *Jahn v. Equine Servs.*,

*PSC*, 233 F.3d 382, 393 (6th Cir. 2000) (observing "a district court should not make a *Daubert*

determination when the record is not adequate to the task")).

In *Schloss v. Sears Roebuck & Co.*, a federal district court in Pennsylvania conducted a

*Daubert* analysis *sua sponte* upon consideration of a defendant's motion for summary judgment.

2006 WL 8459575, at *1. Prior to conducting a *Daubert* analysis of the expert opinion at issue,

the district court found "there is more than sufficient information in these sources to make a

*Daubert* determination regarding [the] expert['s] testimony." *Id.* at *3. The district court found

the record sufficient for a *Daubert* determination based on the expert's report, deposition

testimony, and prior testimony before an arbitration panel. *Id.* The court also found Plaintiff had

"an adequate opportunity to defend the admissibility of [the expert's] testimony" because the issue

of the expert's qualification had been raised when the arbitration panel heard the case and in the

defendant's motion for summary judgment. *Id.* The district court then analyzed the expert's

opinion and testimony to find the expert did not meet the standards under *Daubert* concerning his

qualifications nor the reliability of his testimony. *See id.* at *5-6.

The record is sufficient for a *Daubert* analysis of the remaining experts. Despite the parties'

attempts to frame them otherwise, the parties filed *Daubert* motions and oppositions. The Court

has reviewed those briefings, despite their untimeliness. Additionally, the parties filed the experts'

reports with their briefs, which the Court reviewed. The Court also has the benefit of the summary

judgment record, which contains additional evidence that the experts relied upon in forming their

opinions, including body-worn camera footage from the incident and the tow truck driver's

statement.

### 1. Larry Rotenberg, M.D., DLFAPA

Though neither party has provided the Court with Dr. Rotenberg's CV, Dr. Rotenberg states that he is a physician and psychiatrist. *See* Rotenberg Report at 1 (ECF No. 59-2). Dr. Rotenberg also uses the credential "DLFAPA," which suggests that he is a Distinguished Life Fellow of the American Psychiatric Association. *See id.* These credentials demonstrate that Dr. Rotenberg is qualified as a psychiatric expert.

However, Dr. Rotenberg faces issues as to the reliability of his testimony. To be deemed "reliable," Dr. Rotenberg's testimony "must be 'the product of reliable principles and methods.'" *Slatowski*, 148 F.4th at 138 (quoting FED. R. EVID. 702.) The Third Circuit has made clear that "[s]peculation does not cut it." *Id.*; *see also UGI Sunbury LLC*, 949 F.3d at 833-34 ("Rule 702's reliability threshold requires expert testimony to be 'based on the methods and procedures of science, not on subjective belief and unsupported speculation.'"). Dr. Rotenberg's opinion that Plaintiff's "conviction that had she been white, she would have had different treatment, seems plausible" is just that—speculative. Rotenberg Report at 11 (ECF No. 59-2). This opinion is more akin to mindreading than proffering an expert opinion. Further, opining on the likelihood that Defendant acted out of racial animus and Plaintiff's credibility falls within the realm of the jury. Dr. Rotenberg is therefore **PRECLUDED** from offering this opinion.

Some of Dr. Rotenberg's testimony also fails to "fit" the case. *See UGI Sunbury LLC*, 949 F.3d at 835 (quoting FED. R. EVID. 702). Federal Rule of Evidence 702 makes clear that the party proffering the expert must, among other things, establish "it is more likely than not that" the expert "will help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a). Expert testimony is not helpful, and is thus inadmissible, "if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are

as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect to the subject under investigation." *See Wilburn v. Maritrans GP Inc.*, 139 F.3d 350, 359 (3d Cir. 1998) (quoting *Salem v. U.S. Lines Co.,* 370 U.S. 31, 35 (1962)); *see also Wong v. Belmontes*, 558 U.S. 15, 24 (2009) (per curiam) (explaining expert testimony was unnecessary because evidence at issue "was neither complex nor technical" and it "required only that the jury make logical connections of the kind a layperson is well equipped to make"); *Fellner v. Supreme Corp.*, No. CIV. A. 92-3680, 1995 WL 79787, at *9 (D.N.J. Feb. 21, 1995) ("[I]f a jury is capable of understanding the subject matter through its own knowledge and experience, expert testimony is not admissible because it will not assist the trier of fact.").

Dr. Rotenberg offers conclusions that the jury is more than capable of making themselves—if they come to the same conclusions at all. Namely: (1) Defendant treated Plaintiff "as a second class citizen, a criminal, and even as she says 'an animal'"; (2) Plaintiff's "pathetic state, in the cold, with her therapy dog locked in her car, seemingly drew sympathy from the tow truck driver"; (3) "[b]ut not from officer Brecker, who threatened to arrest her, and in the process of these threats, used vulgar language in addressing her and used racially stereotyped comments"; and (4) Officer's [sic] Brecker's attempt at undoing what he had done and said, was too little and too late." Rotenberg Report at 11 (ECF No. 59-2). Dr. Rotenberg's expertise as a psychiatric expert is wholly irrelevant in forming these conclusions, and the jury is more than capable of using their own common sense in coming to these conclusions. In fact, it is their job to do so. Moreover, it is not proper for Plaintiff's psychiatric expert to offer his conclusions of what occurred on the evening in question. Accordingly, Dr. Rotenberg is **PRECLUDED** from providing these opinions.

Dr. Rotenberg is otherwise permitted to testify at trial. Except for the issues discussed above, Dr. Rotenberg's testimony is reliable. He relied on the records, interviews, and his own expertise in concluding that: (1) Plaintiff has a "long set of problems both in the area [sic] of mental health and in substance abuse"; (2) "[s]he is vulnerable on account of her life experiences, her race, and her history of being subjected to abuse"; (3) Defendant "had an opportunity to give her an emotionally corrective experience"; (4) Plaintiff's "view of the world, and the dangers that a woman of color faces in this world" would have been "altered, possibly forever," had Defendant "dealt with her in a kind and compassionate manner"; (5) Plaintiff "does not sleep well since the incident with" Defendant; (6) Plaintiff "has nightmares involving jail and the police since the incident"; (7) Plaintiff "badly needs long[-]term individual therapy"; (8) Plaintiff "had enough problems, even before, but she now needs therapy, more time and review of her psych meds, and more work for years to come"; (9) Plaintiff "needs help in establishing a sense of trust, in understanding that not all people are racist"; and (10) Plaintiff "has some intelligence and some ambition, and with the right help, her prognosis for change is good." This remaining testimony also "fits" the case because Plaintiff put her mental state at issue, and Dr. Rotenberg's testimony will be helpful to the jury in its assessment of Plaintiff's psychological damages.

## 2. Plaintiff's Expert Darrin Porcher, Ed.D.

Dr. Porcher is qualified to opine about police abuse of authority, discourtesy, and to a limited extent, racial discrimination. Dr. Porcher served with the New York City Police Department ("NYPD") for approximately 30 years. *See* Porcher Report at 4 (ECF No. 57-2). He served as a member of the NYPD Civilian Complaint Review Division and the Internal Affairs Bureau. *Id.* He was a lieutenant assigned to the Community Affairs Bureau, and he supervised the Police and Community Relations as an integrity control officer. *Id.* Dr. Porcher has experience in

training officers on how to communicate with civilians. *Id.* He also previously served as an expert in police abuse of authority cases. *Id.* at 5. His experience as a career police officer makes him qualified to testify as to abuse of authority and discourtesy. Additionally, his experience with NYPD's Internal Affairs Bureau and Community Affairs Bureau, where he observed "discriminatory behavior among officers requiring disciplinary action," makes him qualified to testify about racial discrimination in the policing context.

However, Dr. Porcher is not qualified to testify that Defendant's conduct "unmistakably reflected discriminatory intent." *See* Porcher Report, at 17 (ECF No. 57-2). That amounts to "testify[ing] as to the governing law of the case," which the Court cannot allow. *See Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006); *Summers v. Child.'s Hosp. of Phila.*, No. 21-3479, 2021 WL 5789057, at *2 (E.D. Pa. Dec. 7, 2021) (quoting *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002)) (explaining a Section 1981 claim requires establishing that: (1) the plaintiff "belongs to a racial minority; (2) ***an intent to discriminate on the basis of race by the defendant***; and (3) discrimination concerning one or more of the activities enumerated in § 1981" (emphasis added)). Offering this testimony would usurp the "Court's pivotal role in explaining the law to the jury." *Colkitt*, 455 F.3d at 217 (first quoting *United States v. Leo,* 941 F.2d 181, 195–96 (3d Cir.1991); and then citing *First Nat'l State Bank of N.J. v. Reliance Elec. Co.,* 668 F.2d 725, 731 (3d Cir.1981) (per curiam)).

Dr. Porcher's testimony, with respect to abuse of authority and discourtesy, could possibly have been reliable. He explained that the methodology he used for assessing abuse of authority and discourtesy involved reviewing the facts presented, and he enumerated the sources in which he obtained those facts. *See* Porcher Report at 3-5 (ECF No. 57-2). Dr. Porcher explained that an expert determining abuse of authority and discourtesy must review the evidence from different

perspectives, compare it with body-worn camera footage, and compare the evidence to rules that govern police officers. *Id.* at 5. But the reliability analysis does not end there. To be "reliable," the **conclusions** must also be reliable. *Power*, 2024 WL 4040432, at *4 (W.D. Pa. July 19, 2024) (explaining the court must evaluate the methodology itself and the "reliability of an expert's conclusions drawn from his or her methodology"). Unfortunately, Dr. Porcher did not actually state his opinions as to abuse of authority and discourtesy.

Dr. Porcher does provide an opinion on racial discrimination, but that too fails. First off, this testimony is not reliable. He finds that Defendant's "actions and demeanor towards Ms. Bolder were racially discriminatory," but he offers no explanation as to how he came to that conclusion. Because there is "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert," the Court will preclude Defendant's opinion as to racial discrimination. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Even if Dr. Porcher's opinions were reliable, they also falter at "fit." An opinion as to police abuse of authority or discourtesy would arguably "fit" this case, but "arguably fit" does not suffice. "[A]n expert witness must produce a report providing 'a complete statement of all opinions the witness will express and the basis and reasons for them,'" and the Court unfortunately does not have Dr. Porcher's opinions on how Defendant abused his authority or was discourteous. *See Pugh*, 2024 WL 3581171, at *3 (quoting FED. R. CIV. P. 26(a)(2)(B)(i)). He merely recites the facts as alleged by Plaintiff. Plaintiff bears the burden of proving by a preponderance of the evidence that her expert's testimony "fits" the case, and that is simply impossible without an opinion.

Dr. Porcher's opinion on racial discrimination also does not "fit" because it is not helpful to the jury. As previously discussed, expert testimony will be deemed inadmissible when "the

primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect to the subject under investigation." *See Wilburn v*, 139 F.3d at 359 (quoting *Salem,* 370 U.S. at 35). Expert testimony is also not permitted if the expert is merely "drawing simple inferences 'from uncomplicated facts that serve only to buttress [a party's] theory of the case.'" *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. CIV.A. 09-290, 2012 WL 6562221, at *16 (W.D. Pa. Dec. 15, 2012), *aff'd,* 807 F.3d 1283 (Fed. Cir. 2015) (quoting *In re Rezulin Prods. Liab. Litig.,* 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004)). That is what is occurring here. At best, Dr. Porcher's opinion amounts to interpreting basic stereotypes. The jury does not need an expert to explain to them that a police officer assuming a woman of color is unemployed and does not have money could be considered a racial stereotype.

Further, Dr. Porcher's opinion that Defendant treated Plaintiff as "undeserving of dignity and respect afforded to others" is conclusory and unsupported by the record. To the contrary, the record demonstrates that Defendant's agitated behavior was directed not only towards Plaintiff, but to the tow truck driver, other civilians on the road, and bank patrons waiting in line to use the ATM. *See* App'x to Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 21 (ECF No. 48-2) (tow truck driver explaining Defendant yelled at the driver, sped through the parking lot and on Route 23, ran redlights, and "pinned" three vehicles waiting to use the bank's ATM machine by pulling into the ATM line facing the wrong direction); Def.'s Mot. for Summ. J., Ex. B, at 3:00-19 (ECF No. 47-1) (body-worn camera footage showing Defendant yelling at tow truck driver and speeding out of the parking lot); App'x to Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 28 (ECF No. 48-2) (Chief Stolz finding Defendant "displayed a great amount of anger and poor conduct towards Ms. Bolder

21

*and the responding tow truck operator*" (emphasis added)). "An expert who renders an opinion based on factual assumptions not present in the case cannot be said to assist the trier of fact, as rule 702 requires." *Greenwald Caterers Inc. v. Lancaster Host, LLC*, 699 F. Supp. 3d 382, 397 (E.D. Pa. 2023) (citation modified).

In sum, Dr. Porcher failed to provide opinions at all on the issues of police abuse of authority and discourtesy, and his opinion as to racial discrimination fails under *Daubert*. Dr. Porcher is therefore **PRECLUDED** from testifying at trial.

### 3. Defense Expert Stephen Mechanick, M.D.

Dr. Mechanick is a medical doctor, who has practiced medicine since 1987 and currently practices psychiatry. *See* Pa. Dep't of State, https://www.pals.pa.gov (last visited Oct. 24, 2025) (click "Person Search"; then type "Stephen Mechanick"; and then click "Search"); NPPES NPI Registry, Dr. Stephen Michael Mechanick M.D., https://npiregistry.cms.hhs.gov/provider-view/1538265814 (last visited on Oct. 24, 2025).[1] Dr. Mechanick's credentials make him qualified to conduct a psychiatric evaluation of Plaintiff and opine on whether she developed psychiatric problems or conditions resulting from her encounter with Defendant.

Dr. Mechanick's opinion is also reliable. The methodology he employed is twofold. First, Dr. Mechanick reviewed Plaintiff's medical records, Dr. Rotenberg's report and CV, and other documents related to the litigation. Second, Dr. Mechanick conducted a two-hour psychiatric evaluation of Plaintiff. Dr. Mechanick then based his opinions on his review of the evidence and

---

[1] Neither party provided the Court Dr. Mechanick's CV. Accordingly, the Court took judicial notice of Dr. Mechanick's information on record with the Pennsylvania Department of State and the United States Centers for Medicare & Medicaid Services. *See* FED. R. EVID. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 705 n.5 (3d Cir. 2004) (observing court can take judicial notice of agency's public records).

examination of Plaintiff. This methodology supports Dr. Mechanick's conclusions that: (1) "[t]here is no evidence that [Plaintiff] reported having any psychiatric problems or sought help related to the January 20, 2022 incident after the date of the incident"; (2) he saw no evidence of being diagnosed with PTSD after the incident; (3) there is no evidence that she is afraid of police; (4) Plaintiff's "self-injurious behavior during 2024 [was] related to her current stresses, including her homelessness and substance abuse" and not the January 20, 2022 incident; (5) he saw no evidence that "her substance abuse problems were causally related to the January 20, 2022 incident"; (6) Plaintiff "did not develop psychiatric problems or any psychiatric condition as a result of the events of January 20, 2022"; and (7) Plaintiff "does not require counseling or psychiatric medication for anything related to the events of January 20, 2022." *See* Mechanick Report, at 21-23 (ECF No. 65-4).[2]

Finally, Dr. Mechanick's opinion fits this case. Plaintiff has put her mental state at issue in this litigation, and Dr. Mechanick's testimony will be helpful to the jury in determining psychological damages.

Dr. Mechanick is **ADMITTED** to testify at trial.

---

[2] While Plaintiff correctly observes that Dr. Mechanick omitted from his report that Plaintiff reported "people in uniform" and "when someone treats me like a prisoner" as triggers, Dr. Mechanick nonetheless lists that he "considered" these records. *Compare* Mechanick Report, at 2, 4-5, 7-9 (ECF No. 65-4) (referring to records from Malvern and Haven), *with* Pl.'s Mot. in Lim., Ex. B (ECF No. 65-5) (attaching Malvern records dated November 19, 2024 and December 4, 2024, and Haven records). The recent amendment to Rule 702 also clarifies "if the court finds it more likely than not that an expert has a sufficient basis to support an opinion, the fact that the expert has not read every single study that exists will raise a question of weight and not admissibility." FED. R. EVID. 702 advisory committee's note to 2023 amendment.

## V.     CONCLUSION

For the reasons laid out above, the Court **GRANTS** Defendant's motion to strike Plaintiff's Expert Pastor John Peyton, Ph.D., and Pastor Peyton is **PRECLUDED** from testifying at trial due to untimely disclosure. The Court **DENIES** the remaining motions as untimely. Upon the Court's *sua sponte Daubert* analysis, the Court **PARTIALLY PRECLUDES** Plaintiff's Expert Larry Rotenberg, M.D. from testifying at trial, **PRECLUDES** Plaintiff's Expert Darrin Porcher, Ed.D. from testifying at trial, and **ADMITS** Defense Expert Stephen Mechanick, M.D. to testify at trial. An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge